UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

_____
SECURITIES AND EXCHANGE         :
COMMISSION,                     :
                                :
         Applicant,             :
                                :
v.                              :
                                :
235 LIMITED LIABILITY COMPANIES,:
                                :
         Respondents.[1]        :
_____:

## SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER TO SHOW CAUSE ENFORCING ADMINISTRATIVE SUBPOENAS

Applicant Securities and Exchange Commission applies for an order compelling 235 Limited Liability Companies ("235 LLCs" or "Respondents"), to comply with the Commission's subpoenas, lawfully issued on August 16 and 17, 2017, to produce documents in connection with an ongoing investigation. The Commission's investigation seeks information regarding Woodbridge Group of Companies, LLC, including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing (hereinafter "Woodbridge") and its receipt of over $1 billion of investor funds and whether the company is operating a fraud on its investors. Woodbridge's operations are ongoing and it continues to raise

---

[1] 236 Limited Liability Companies were originally subpoenaed. As detailed below, the Commission has only received a response from one. Thus, this action is against 235 LLCs, which are appended as Exhibit A to the accompanying declaration of Linda S. Schmidt, SEC Senior Counsel. [Exhibit 1].

significant funds from investors. Therefore, the Commission brings this summary proceeding to obtain key documents necessary to its investigation.

Specifically, the Commission seeks an order to show cause requiring the 235 LLCs, which we believe are owned and/or controlled by Woodbridge's President, Robert Shapiro, to appear before this Court and explain why they have not yet produced documents which identify (a) financial institution information of the LLCs (b) payments made to Woodbridge; and (c) the names of the LLC's managers or members, including but not limited to corporate formation documents, initial resolution, and Form SS-4 (Application for Employer Identification Number) filed with the IRS. The Commission also seeks confirmation of the absence of financial institutions if that is the case and/or the absence of payments to Woodbridge.[2] In support of this application, the Commission states as follows:

## I.     INTRODUCTION

Over the course of the past year, the Commission has been investigating Woodbridge in connection with possible significant violations of the securities laws, including anti-fraud violations. As the investigation has unfolded, it has come to the attention of the Commission's investigative team that there are numerous LLCs that are interwoven into the structure of products Woodbridge offers for investment. In the course of recognizing the significance of these LLCs, particularly juxtaposed to the representation Woodbridge has been making to investors, the Commission's investigative team issued subpoenas to 236 LLCs.

---

[2]This is the second subpoena enforcement action the Commission has brought pertaining to its investigation of Woodbridge. The first is *SEC v. Woodbridge Group of Companies, LLC.,* 17-mc-22665-CIV-ALTONAGA/GOODMAN. The Commission has currently moved for contempt for Woodbridge's failure to comply with the Court's Order to produce certain emails.

The 236 LLC subpoenas sought basic information about the formation, ownership and bank account information about the LLCs, in order to garner further insight into their affiliation and connection with Woodbridge and its President, Robert Shapiro. However, despite service of the subpoenas, and demand letters sent approximately six-weeks later, the Commission has not received a response from 235 of the LLCs.

This information is critical to the Commission's investigation, and thus the Commission is now forced to file this Application. In support of this application, the Commission submits the attached Declaration of Linda S. Schmidt, Senior Counsel at the Commission (Exhibit 1). The 235 LLCs have completely ignored the Commission's subpoenas and have provided no legally justifiable argument for their refusal to comply with the targeted requests of the Subpoenas. Thus, the Commission requests that this Court enter an Order to Show Cause, compelling Respondents to appear before the Court and show cause why the Commission's August 16 and 17, 2017 subpoenas should not be enforced.

## II. STATEMENT OF FACTS

### A. The Commission's Authority and Reason for Investigation

1. On September 27, 2016, the Commission issued a Formal Order Directing Private Investigation and Designating Officers to Take Testimony in the matter of *Woodbridge Mortgage Investment Fund III, LLC* (FL-04024) and on January 17, 2017, issued a Supplemental Order Designating Additional Officers (collectively, the "Formal Order") [Exh. 1, ¶2].

2. The Commission is investigating possible ongoing violations of Sections 5(a), 5(c), and 17(a) of the Securities Act, and Section 15(a) and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, by Woodbridge and other persons and entities. Specifically, the Commission is investigating the offer and sale of unregistered securities, the sale of securities by

3

unregistered brokers, and the commission of fraud in connection with the offer, purchase, and sale of securities. [*Id.*].

3. The Formal Order directs the Commission's staff to conduct a private investigation to determine whether, among others, Woodbridge and its "affiliates and/or other individuals or entities related thereto" have engaged in, or are about to engage in, the enumerated potential violations of the federal securities laws. [*Id.*, ¶4].

4. Under the Commission's Formal Order in this case, members of the Commission's staff are officers of the Commission empowered to administer oaths, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the investigation. [*Id.*, ¶5].

5. Woodbridge has raised more than $1 billion from several thousand investors nationwide through multiple investment offerings using various forms and structures. [*Id.,* ¶6].

6. As part of or in connection with these activities, Woodbridge, its officers, directors, employees, partners, subsidiaries, and/or affiliates and/or other persons or entities, directly or indirectly, may have been or may be, among other things, making false statements of material fact or failing to disclose material facts, to investors and others, concerning, among other things, the use of investor funds, the safety of the investments, the profitability of the investments, the sales fees, or other costs associated with the purchase of the investments. [*Id.,* ¶7].

7. One product advertised by Woodbridge for investment is the First Position Commercial Mortgage ("FPCM"). Woodbridge currently describes it as a "private third-party loan to Woodbridge [which] provides higher returns with shorter terms secured by commercial

real estate. Private lenders select a commercial mortgage in Woodbridge's inventory to serve as collateral for their private loan. They are recorded on title and acquire a first lien position on the mortgage. And every lender is paid monthly interest from the moment they loan to Woodbridge at a fixed annual 5% interest with a return of principal at the end of the one-year term." [*Id.* ,¶8].

8. Each time a property is purchased by Woodbridge to add to its inventory, Woodbridge forms a different LLC, purportedly to segregate liability. [*Id.,* ¶9]. These are the LLCs that the Commission's investigative team subpoenaed for documents. [*Id*].

### B. The Commission's Subpoena

9. During the course of the investigation, on August 16 and 17, 2017, the Commission's investigative team issued 236 individual subpoenas to the separate LLCs requesting, in sum, formation and ownership records of the LLCs and identification of the individual LLC's financial institutions and the details of those bank records, from January 1, 2012 through the date of production [*Id.,* ¶ 10]. Responses were due August 30 and 31, 2017, respectively. [*See id*]. The Commission's investigative staff received proof of service of the subpoenas on the LLC's registered agents. [*See id*].

10. Having received no response to the 236 LLC subpoenas, on September 29, 2017 and October 2, 2017, the Commission's investigative team issued demand letters to 167 of the 236 LLCs.[3] [*Id.,* ¶11]. Having previously received indication that counsel for Woodbridge might also represent the LLCs, we copied counsel for Woodbridge on these demand letters.

---

[3] Due to a clerical error, a portion of the LLCs were not included in the appended list of the demand letter to "A Registered Agent," the registered agent for the vast majority of the LLCs, hence the discrepancy between 167 appended to the demand letter and the 236 LLCs that were subpoenaed. [*Id.,*¶11 n.2].

[*Id.*].  Counsel for both Woodbridge and Shapiro have subsequently indicated that neither they nor their law firms represent these LLCs.  [*Id.*].

11.     As of the date of this filing, the Commission has not received documents responsive to 235 of the 236 LLC subpoenas.  [*Id.,* ¶12].  The one response it has received after the demand letter was sent was from an entity indicating it had no affiliation with Woodbridge or its President, Robert Shapiro.  Therefore, this action is against the 235 LLCs who have ignored the Commission's subpoenas.  [*Id.*].

### C.     The LLC's Response to the Subpoena is Critical to the Commission's Investigation

12.     The documents sought by the 235 LLC subpoenas are necessary to the Commission's investigation of potential securities laws violations and are expected to provide additional relevant information pertinent to the investigation. Woodbridge has represented to investors that bona-fide third parties are borrowing money and repaying interest at a high rate, of which the investors in Woodbridge funds get a portion thereof.  However, evidence obtained in our investigation reveals that many, if not all, of these LLCs may be Woodbridge affiliates with Shapiro as their Manager.[4]  Yet, the Commission does not have the granular formation, ownership and bank account information for the LLCs.  Identifying the incorporators and owners of the LLCs (whether Robert Shapiro, President of Woodbridge, or others), the LLCs' bank accounts, and the flow of money or lack thereof between the LLCs and Woodbridge, is critical to conducting a robust investigation.  [*Id.,* ¶13].

---

[4] For example, 695 Buggy Circle, LLC, was one of the LLC's subpoenaed.  The Articles of Incorporation list the principal office as 14225 Ventura Blvd., Suite 100, Sherman Oaks, CA 91423, which is Woodbridge's business address, c/o Diana Balayan, a Woodbridge employee.  Further, Shapiro signs as Manager of the LLC in documents such as the Deed of Trust, given by 695 Buggy Circle, LLC, for the benefit of Woodbridge Mortgage Investment Fund 3A LLC, with the same address, and also signs as Manager on the Promissory Note and Final Buyer's Closing Statement.  [*Id.,* ¶13].

13. Corporate ownership information for these LLCs is not available from other sources, such as a Secretary of State corporate records, because these LLCs are based in Delaware and Colorado - states that do not maintain or provide public access to ownership, member or shareholder information. [*Id.,* ¶14]. Moreover, Shapiro has asserted his Fifth Amendment privilege, thus forcing the Commission to establish these facts from other sources. [*Id.*].

### D. Solicitations by Woodbridge Continue As Do Investments into Woodbridge Products

14. Based on the investigation, the Commission's investigative team is aware that Woodbridge continues to solicit investors to invest in its various investment platforms, and investors continue to invest. [*Id.,* ¶15].

## III. MEMORANDUM OF LAW

### A. The Court Has Jurisdiction and Venue Properly Lies in This District

Congress gave the Commission broad authority to conduct investigations and require production of evidence and testimony relevant to those investigations. *See, e.g.*, Sections 21(a) and (b) of the Exchange Act, 15 U.S.C. §§ 78u(a) and (b) ("For the purpose of any such investigation, or any other proceeding under this title, any member of the Commission or any officer designated by it is empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence . . . ."); *see also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984) ("It appears, in short, that Congress intended to vest the SEC with considerable discretion in determining when and how to investigate possible violations of the statutes administered by the Commission."); *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1380 (D.C. Cir. 1980) (given the Commission's broad statutory mandate to investigate, there was

"virtually no possibility" the Commission exceeded its authority in issuing an investigative subpoena).

Furthermore, when parties refuse to comply with lawful Commission demands for documents or testimony issued pursuant to the Commission's broad statutory authority to investigate, Congress has authorized the Commission to seek, and the federal courts to issue, orders compelling production or testimony. "In case of . . . refusal to obey a subpoena issued to any person, the Commission may invoke the aid of any court of the United States within which the jurisdiction of which such investigation or proceeding is carried on . . . in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records." Section 21(c) of the Exchange Act, 15 U.S.C. § 78u(c).

That very language also provides that venue lies in the Southern District of Florida, as it provides the Commission may seek a court order "within which the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business." 15 U.S.C. § 78u(c). Here, venue is proper in this district because the investigation is being carried on in and requires the production of responsive information in the Southern District of Florida. (*See* Exh. 1 ¶¶1, 3).

      **B.**      **The Court Should Conduct A Summary Proceeding**

Subpoena enforcement actions are generally summary in nature and the Court may therefore hear them in summary fashion without strict adherence to the Federal Rules of Civil Procedure. *United States v. Elmes*, 532 F. 3d 1138, 1143 (11th Cir. 2008) (under Rule 81(a)(3) of the Federal Rules of Civil Procedure "the district court has discretion to deny hearings or limit the applicability of discovery in a proceeding to compel the production of documents in accordance with a subpoena issued by an officer or agency of the United States"); *SEC v.*

*Sprecher*, 594 F.2d 317, 320 (2d Cir. 1979) (upholding right of district court to enforce subpoenas in summary proceedings without the filing of a complaint pursuant to Section 22(b) of the Securities Act, 15 U.S.C. § 77v(b), which allows a district court to enforce a subpoena "upon application of the Commission").

Accordingly, the Commission asks the Court to promptly set an Order to Show Cause Hearing so that Respondents' failure to respond to the subpoenas is not allowed to continue. *SEC v. First Security Bank*, 447 F.2d 166, 168 (10th Cir. 1971).

### C. The Commission's Subpoena Satisfies All Requirements for Enforcement

A district court's role in a proceeding to enforce an administrative subpoena "is limited." *EEOC v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996). Under that limited review, a court should enforce an administrative subpoena if it is reasonably relevant to an authorized investigation. *EEOC v. Technocrest Sys.,* 448 F.3d 1035, 1040 (8th Cir. 2006). *See also United States v. Morton Salt*, 338 U.S. 632, 652 (1950) (courts should only inquire into whether an administrative subpoena "is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant"); *Tire Kingdom*, 80 F.3d at 450 (same).

Courts have generally looked at four criteria to determine whether to enforce a Commission subpoena: (1) the investigation is being conducted pursuant to a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information the Commission seeks is not already in its possession; and (4) the Commission has fulfilled the necessary administrative steps. *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *RNR Enterprises, Inc. v. SEC,* 122 F.3d 93, 96-97 (2d Cir. 1997); *SEC v. Howatt*, 525 F.2d 226, 229 (1st Cir. 1975); *SEC v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047, 1053 (2d Cir. 1973). Once the Commission satisfies these criteria, the burden shifts to a respondent to demonstrate the subpoena is unreasonable.

*Brigadoon Scotch,* 480 F.2d at 1056. However, the burden of showing unreasonableness "is not easily met" as long as the Commission's inquiry is legally authorized and the information it seeks is relevant to the inquiry. *Id.*

1. *The Commission's Purpose is Lawful*

As discussed above, Congress has given the Commission broad authority to investigate whether the federal securities laws, rules, and regulations "have been or are about to be violated." Section 20(a) of the Securities Act, 15 U.S.C. § 77t(a); Sections 21(a) and (b) of the Exchange Act, 15 U.S.C. § 78u(a) and (b). Pursuant to that authority, the Commission issued the Formal Order authorizing designated officers to conduct an investigation into possible violations of Sections 5(a), 5(c) and 17(a) of the Securities Act and Sections 15(a) and 10(b) of the Exchange Act and Rule 10b-5 thereunder by Woodbridge and related persons and entities. (Exh. 1, ¶¶2, 3).

Pursuant to the authority conferred under the Formal Order, the Commission's investigative team issued the subpoenas to the 235 LLCs, seeking documents. The subpoenas are within the parameters of the Commission's broad discretion to investigate: "For the purpose of any such investigation, or any other proceeding under this title, any member of the Commission or any officer designated by it is empowered to . . . require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry." 15 U.S.C. § 78u(b); *see also O'Brien*, 467 U.S. at 745 ("It appears, in short, that Congress intended to vest the SEC with considerable discretion in determining when and how to investigate possible violations of the statutes administered by the Commission").

Accordingly, the Commission's purpose in issuing the subpoenas to the 235 LLCs to produce documents was lawful.

### 2. *The Commission Seeks Relevant Information*

The measure of relevance used in subpoena enforcement actions is "quite broad." *United States v. Florida Azalea Specialists*, 19 F.3d 620, 624 (11th Cir. 1994). A district court may enforce a subpoena so long as "the materials sought are not clearly irrelevant or immaterial." *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1029 (D.C. Cir. 1978) (upholding district court's use of that language as standard for relevance).

The Commission is investigating possible ongoing violations of the federal securities laws, including fraud. The potential violations by Woodbridge, Shapiro, and their entities and affiliates are serious and wide-ranging. There are numerous investors and a tremendous amount of money invested thus far. Woodbridge continues to solicit investors to invest in its various investment platforms, and investors continue to invest.

The documents sought by 235 LLC subpoenas are highly pertinent to the investigation. The Commission must know whether it is Robert Shapiro and/or Woodbridge behind the LLCs that are the purportedly third-party borrowers. Confirmation of the identity of who formed the LLCs, who owns them, and whether there has been any transfer of money from the LLCs to Woodbridge would further the Commission's investigation by enabling the Commissions to definitively determine whether or not these LLCs are Woodbridge affiliates and to clearly understand the flow of money.

### 3. *The 235 LLCs Possess Information the Commission Lacks*

The documents sought from the 235 LLCs contain information the Commission lacks. While other documents produced in the investigation indicate that Shapiro signs on behalf of the LLCs as a Manager, only the information sought by the subpoenas can definitively establish the ownership structure. Neither Colorado nor Delaware make such ownership information public,

and of course the bank records are not publicly available. Moreover, Shapiro has asserted his Fifth Amendment privilege, thus forcing the Commission to establish these facts from other sources.

### 4. *The Commission Has Satisfied All Necessary Administrative Steps*

The Commission issued the 235 LLC subpoenas in accord with all applicable administrative requirements. Section 19(b) of the Securities Act, 15 U.S.C. § 77s(b), and Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b), empower the Commission to subpoena documents and testimony in the course of investigations. Here, an attorney for the Division of Enforcement, designated as an officer of the Commission in the Formal Order, issued the subpoenas to the 235 LLCs. [Ex. 1, ¶10].

Furthermore, under the Commission's Rules Relating to Investigations and Rules of Practice, an officer of the Commission may serve an investigative subpoena by several methods, including by personal service.[5] The Commission's investigative team complied with those Rules in serving the subpoenas on the LLCs registered agents. [*Id.*].

## IV. CONCLUSION

The Commission has satisfied all the requirements for enforcement of the administrative subpoena to the 235 LLCs. Furthermore, the Commission has shown there is no legal support to the contrary, as the 235 LLCs have failed to respond to the Subpoena in any way. Accordingly, the Commission requests this Court to expeditiously conduct a summary

---

[5] Rule 8 of the Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, provides service of subpoenas in formal investigations shall be as prescribed in Rule 232(c) of the Commission's Rules of Practice, 17 C.F.R. § 201.232(c). Rule 232(c), in turn, provides the method of service shall be as set forth in Rule 150(b)-(d), 17 C.F.R. § 201.150(b)-(d), which allows service by either facsimile or express mail, either directly on a party or, if the party is represented by counsel, on counsel.

proceeding and issue an Order to Show Cause compelling Respondents to appear before the Court and show cause why the Commission's August 16 and 17, 2017 subpoenas should not be enforced.

{*Proposed Order Attached*}

Dated:  October 31, 2017                    Respectfully submitted,

By:    s/*Russell Koonin*
Russell Koonin
Senior Trial Counsel
Florida Bar No. 474479
Direct Dial: (305) 982-6385
E-mail:  kooninr@sec.gov


s/*Christine Nestor*
Christine Nestor
Senior Trial Counsel
Florida Bar No. 597211
Direct Dial: (305) 982-6367
E-mail:  nestorc@sec.gov


Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154

## **CERTIFICATE OF SERVICE**

I hereby certify that, on October 31, 2017, a copy of the foregoing was served via U.S. Mail on:

A) A Registered Agent, Inc.
   Attention: Ms. Debbie Woods
   8 The Green, Suite A
   Dover, DE 19901*

B) Exquisite Homes, Inc.,
   C/o Delaware Entity Services, LLC
   1013 Centre Road, Suite 4035
   Wilmington, DE 19805

C) DPAR Investments, LLC
   c/o Harvard Business Services, Inc.
   16192 Coastal Highway,
   Lewes, DE 19958

D) Northwest Registered Agent, LLC
   1942 Broadway Street, Suite 314C
   Boulder, CO 80302*

E) Mason-Realty Columbus Properties, LLC
   c/o The Corporation Trust Company
   Corporation Trust Center
   1209 Orange Street
   Wilmington, DE 19805

F) Robert Shapiro, Manager
   14225 Ventura Blvd., Suite 100
   Sherman Oaks, CA 91423

              /s/ *Russell Koonin*____
              Russell Koonin, Esq.

*Appended list of pertinent LLCs provided to Registered Agent.

I hereby also certify that a process server was contracted to formally serve process of this Application on the above five registered agents and Mr. Shapiro. Proof of such service will be filed with the Court once received.

/s/ *Russell Koonin*  
Russell Koonin, Esq.